UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAWAN HASSAN FADUL MOHAMED,

Petitioner,

v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT FIELD OFFICE
DIRECTOR and FACILITY
ADMINISTRATOR,

Respondents.

CASE NO. 2:26-cv-00181-TL

ORDER ON PETITION FOR
HABEAS CORPUS

This matter is before the Court on Petitioner Fawan Hassan Fadul Mohamed's Petition for Habeas Corpus ("habeas petition"). Dkt. No. 5. Respondents are (1) "Immigration and Customs Enforcement ('ICE') Field Office Director," which the Court construes as referring to Laura Hermosillo, who is presently acting in that capacity in the relevant region, and (2) "Facility Administrator," which the Court construes as referring to Bruce Scott, the warden of the Northwest ICE Processing Center ("NWIPC"), where Petitioner is being held. Having

ORDER ON PETITION FOR HABEAS CORPUS – 1

considered the motion, Respondent's return memorandum[1] (Dkt. No. 12), Petitioner's reply (Dkt. No. 15), and the relevant record, the Court GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing.

## I.    BACKGROUND

Petitioner, a citizen of Sudan, was first apprehended by Border Patrol inside the United States near Otay Mesa, California, on February 12, 2024, approximately five hours after entering from Mexico "at a time and place other than as designated by the Secretary of the Department of Homeland Security [('DHS')] of the United States." Dkt. No. 14-1 (first DHS Form I-213) at 2–3. Petitioner was taken into custody and transported to a Border Patrol facility. *Id.* at 3. The following evening, Petitioner was served with an administrative warrant for his arrest on the basis that he was "within the country in violation laws and . . . therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act." Dkt. No. 14-5 (Administrative Warrant) at 2. A custody determination was conducted by DHS under 8 U.S.C. 1226 and 8 C.F.R. 236, and Petitioner was released into the United States on his own recognizance. Dkt. No. 14-6 (Notice of Custody Determination) at 2; *see also* Dkt. No. 14-3 (Order of Release on Recognizance ("OREC")) at 3. Before being released, Petitioner was served with a Notice to Appear ("NTA") charging him as subject to removal from the United States as "an alien present in the United States who has not been admitted or paroled" and requiring him to report before an Immigration Judge ("IJ") in New York City on March 3, 2025.[2] Dkt. No. 14-2 (NTA) at 2.

Three months later, Petitioner was apprehended again. This occurred after a Border Patrol agent in Blaine, Washington, observed Petitioner crossing from the United States into Canada

---

[1] Where used in the singular, the term "Respondent" includes only the (Acting) ICE Field Office Director. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[2] Petitioner had informed DHS that New York was his intended destination in the United States. Dkt. No. 14-1 at 4.

ORDER ON PETITION FOR HABEAS CORPUS – 2

without inspection on May 13, 2024. Dkt. No. 14-4 (second DHS form I-213) at 3. Canadian law enforcement was notified and attempted to apprehend petitioner, who crossed back into the United States and was re-detained by the Border Patrol officer who had originally spotted him. *Id.* at 4. Petitioner was initially arrested for illegal [re-]entry into the United States.[3] *Id.* However, after his biographical and biometric information was entered into DHS databases and connected with his existing immigration profile, he "was processed as a Custody Redetermination[.]" *Id.* Petitioner was served with a new Notice of Custody Determination and administrative warrant for his arrest (*id.*); however, these have not been provided to the Court. Petitioner's OREC was revoked, and DHS arranged for Petitioner to be detained at NWIPC. *See id.* at 5.

Twenty-one months later, Petitioner remains in ICE detention at NWIPC. Dkt. No. 5 at 1. According to Respondent's declarant Deportation Officer Joseph Carnevale, "Petitioner has not requested a bond hearing in this matter." Dkt. No. 13 ¶ 16. It is Respondent's position that he is not entitled to one. Dkt. No. 12 at 2.

On January 16, 2026, Petitioner filed a petition for writ of habeas corpus, arguing (1) that his detention has become unjustifiably prolonged in violation of his due process rights and (2) that he is entitled to immediate release or a bond hearing. Dkt. No. 5. On January 30, 2026, Respondent filed a return to the habeas petition (Dkt. No. 12), along with Officer Carnevale's declaration (Dkt. No. 13) and excerpts from Petitioner's immigration records (Dkt. Nos. 14–14-7). Petitioner filed a reply with an attached declaration on February 5, 2026. Dkt. No. 15. The

---

[3] Despite this characterization, and Respondent's assertion that Petitioner "unlawfully entered the United States at the U.S.–Canada border," it is not evident that Petitioner's physical departure from and re-entry to the United States constitute a departure and re-entry for purposes of immigration law. *See Handa v. Crawford*, 312 F. Supp. 2d 1367, 1373 (W.D. Wash. 2004) ("In this case, Dr. Handa was never admitted into Canada; he was instructed to return to the United States border to clarify his visa status. . . . The fact that Dr. Handa was physically permitted to drive past the Canadian border crossing and drive around the Canadian flag pole, does not change the fact that Dr. Handa had not legally entered Canada. Because Dr. Handa had not legally entered Canada, Dr. Handa did not legally depart from the United States."), *aff'd sub nom. Handa v. Clark*, 401 F.3d 1129 (9th Cir. 2005); *Matter of T—*, 6 I & N Dec. 638 (BIA 1955) (return of noncitizen, who had physically left the United States by boat but was was not permitted to leave the vessel at any foreign port did not constitute an entry where but was not permitted to disembark at any foreign port; did not constitute an entry).

ORDER ON PETITION FOR HABEAS CORPUS – 3

habeas petition is now ripe for the Court's review.

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 8 U.S.C. § 2241(c).

## III.   DISCUSSION

The Parties ultimately agree that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. No. 5 at 3–5; Dkt. No. 15 at 5. Respondent acknowledges that Petitioner's detention has now become prolonged (Dkt. No. 12 at 2, 6) but argues that his detention is mandatory under § 1225(b). Respondent correctly identifies the standard courts in this Circuit has used for determining whether prolonged detention under § 1225(b) has become unconstitutional—a five-part test created in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–18 (W.D. Wash. 2019)—and both Respondent and Petitioner (in reply) make their arguments within that framework. *See* Dkt. No. 12 at 5–6; Dkt. No. 15 at 3–4. Accordingly, the Court assumes without deciding, and only for the purposes of this petition, that Petitioner is detained pursuant to 8 U.S.C. § 1225(b).[4]

---

[4] It would be very difficult for the Court to reach this conclusion on the merits of the arguments and evidence presented here. The immigration documents filed by Respondent overwhelmingly and without exception refer to detention, release, and re-detention under INA § 236—that is, 8 U.S.C. § 1226. *See* Dkt. No. 14-5 at 2 (administrative warrant "authorized by section 236"); Dkt. No. 14-3 at 2 (ordering release "[i]n accordance with section 236"); Dkt. No. 14-6 (DHS Form I-286, Notice of Custody Determination, "[p]ursuant to the authority contained in" INA § 236 and 8 C.F.R. § 236); Dkt. No. 14-4 at 3 (Petitioner "processed as a Custody Redetermination" in February 2024 and served with another I-286). More precisely, these documents show detention under § 1226(a), since the only other detention-authorizing provision in § 1226 is specific to "criminal aliens" (which Petitioner is not) and does not authorize conditional release. *See* 8 U.S.C. § 1226(c). Respondent's arguments that Petitioner falls within 8 § U.S.C. § 1225(a), even if correct, demonstrate only that Petitioner *could* have been detained pursuant to § U.S.C. 1225(a), not that he *is* detained under that provision. *See* Dkt. No. 12 at 3–5.  These arguments mean little when they fail to reckon with DHS's own records that, for example, Petitioner was "taken into custody as authorized by section 236 of the Immigration and Nationality Act." Respondent neither

ORDER ON PETITION FOR HABEAS CORPUS – 4

**A.    The *Banda* Factors**

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention for noncitizens detained pursuant to 8 U.S.C. § 1225. *See Banda,* 385 F. Supp. 3d at 1106. However, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test established in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because balancing the *Mathews* factors does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided" and was "not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1106–07 (citation modified). Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the

acknowledges this contradiction, suggests that DHS's earlier classification of Petitioner was erroneous, clarifies if and when Petitioner was reclassified from one detention regime to another, nor makes any attempt to argue that such reclassification would be lawful. The factual record is simply ignored.

In this case, the result would ultimately be the same if Petitioner had maintained that his detention was governed by § 1226(a). A noncitizen who objects to DHS's decision to detain him under § 1226(a) "may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). According to Respondent's declarant, Petitioner has not requested a bond hearing. Dkt. No. 13 ¶ 16. Currently, the government is treating Petitioner as detained under § 1225(b) and "not entitled to a bond hearing" (Dkt. No. 12 at 2), so any request for judicial review would have been futile. If Petitioner is detained under § 1226(a) without his rightful opportunity to challenge his detention, he would be entitled to a court-ordered bond hearing, the same relief that *Banda* provides. *See, e.g., Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (requiring respondents to provide bond hearing to petitioner misclassified as detained under § 1225(b) rather than § 1226(a)).

ORDER ON PETITION FOR HABEAS CORPUS – 5

removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention without a bond hearing under 8 U.S.C. § 1225(a) has become unjustifiably prolonged and thus violative of due process. *See, e.g.*, Maliwat, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. C25-1282, 2025 WL 3466971 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom Belqasim v. Hermosillo*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). As Respondent anticipates (*see* Dkt. No. 12 at 5), and as Petitioner requests (Dkt. No. 15 at 3), the Court will likewise apply the *Banda* test in determining whether Petitioner's prolonged detention without a bond hearing violates the Constitution.

### 1.      Total Length of Detention

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Respondents agree that this factor "likely favors Petitioner." Dkt. No. 12 at 6. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022).

As of the date of this Order, Petitioner has been detained for over 21 months. *See* Dkt. No. 5 at 1. In other words, Petitioner—who has been accused of no crime—has lost nearly two years of his life to civil detention pending the outcome of a slow administrative process. Courts

in this district have found that detention of significantly lesser duration weighs in favor of granting a bond hearing. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1118–19 (finding that petitioner's length of detention "strongly favors" a bond hearing because "Petitioner has been in detention for approximately 17 months, which is a very long time."); *Toktosunov*, 2025 WL 3492858, at *4 (16-month detention weighed in favor of granting a bond hearing); *Cardozo v. Bostock*, No. C25-871, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (same where detention was 12 to 13 months)); <u>*Maliwat*</u>, 2025 WL 2256711, at *2  ("nearly" 12 months); *Rahman v. Garland*, No. C24-2132, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, 2025 WL 1919252 (July 11, 2025) ("almost" 12 months); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (Apr. 18, 2024) (11 months).

Therefore, the Court finds that the first *Banda* factor weighs heavily in favor of granting a bond hearing.

### 2.    Likely Duration of Future Detention

The second factor for the Court to consider is the likely duration of future detention. *Banda*, 385 F. Supp. 3d at 1118.  Respondent asserts that "[a]ny assessment of the length of his future detention would be speculative at best because it is unclear how the BIA [(Board of Immigration Appeals)] will rule and whether further proceedings will be needed. Thus, this factor should be neutral." Dkt. No. 12 at 6. Petitioner replies to this argument with a citation to *Banda* itself. Dkt. No. 15 at 4. There, the court wrote: "Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer. This factor favors granting petitioner a bond hearing." *Banda*, 385 F. Supp. 3d at 1119. Respondent does not

distinguish the facts here from the similarly "speculative" length of future proceedings at issue in *Banda*, nor shows why, if the facts are *not* distinguishable, this Court should reach a different conclusion than the *Banda* court whose test it applies.

Additionally, Respondent makes no argument as to whether, if and when Petitioner's order of removal does become final, it can even be executed due to the ongoing civil war in Sudan, which is currently designated for Temporary Protected Status. *See Temporary Protected Status Designated Country: Sudan*, U.S. Citizenship and Immigration Servs. (May 28, 2025), https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-sudan [https://perma.cc/2Q23-NFP5]. Petitioner, who proceeds pro se, raises this issue in replying to Respondent's return memorandum, where the *Banda* test was raised and its factors identified for the first time.[5] As to this factor, Petitioner writes in the declaration accompanying his reply, "There is no way for ICE to deport me back to my home, there is no airports are working of this due civilian war and there is no home for me at all now. So even if my immigration will not be in my favor I still will be detained here as there is no way to deport me." Dkt. No. 15 at 14. This potential barrier to Petitioner's removal raise further concerns that, without judicial intervention, his detention will be indefinite and perhaps interminable.

Therefore, the Court finds that the second *Banda* factor weighs in favor of granting a bond hearing.

### 3.      Conditions of Detention

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he or she is entitled to a bond hearing." *Diaz Reyes v. Wolf*, No. C20-0377, 2020 WL 6820903, at *6 (W.D. Wash. Aug. 7,

---

[5] Respondent did not seek leave to file a surreply to address the *Banda* arguments in Petitioner's reply.

2020) (citation modified) (quoting *Jamal A.*, 358 F. Supp. at 860), *report and recommendation adopted as modified*, No. C20-0377, 2020 WL 6820822 (W.D. Wash. Nov. 20, 2020), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021).

Respondent asserts that because Petitioner "presents no evidence towards the conditions of his detention[,] this factor should favor Respondent." Dkt. No. 12 at 6. Were there indeed a total lack of evidence regarding the conditions of detention at NWIPC—for Respondent offers none—this factor would not favor Respondent; it would be neutral. But it is understandable that Petitioner had not introduced conditions-of-confinement evidence before Respondent's return memorandum because, again, the *Banda* factors were raised for the first time in that filing. In the declaration accompanying his reply, Petitioner alleges that the conditions at NWIPC are "like a jail," there is no privacy, he has inadequate support for his mental health, recreation time is limited to an hour a day "and most of the time they cancel it," and outdoor recreation was cancelled for *three and a half months* after a detainee escaped in spring 2025. Dkt. No. 15 at 15. Petitioner further alleges that internet access for legal research is severely curtailed and that he has been forced to violate his religious dietary practices because of the insufficiency of halal meal offerings. *Id.* at 16. In sum, he finds "[e]verything here made for punishment . . . ." *Id.*

Petitioner's account of conditions at NWIPC is consistent with evidence from other petitioners detained there; this Court and others in this District have found such conditions favor granting a bond hearing. *See, e.g.*, *Toktosunov,* 2025 WL 3492858, at *5; *Diaz Reyes*, 2020 WL 6820903, at *7; *Maliwat*, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025). In *Toktosunov,* where the petitioner was represented by counsel and provided evidence of the same conditions Petitioner alleges here, Respondent (along with other government respondents named in that case) "concede[d] that this factor 'likely favors petitioner.'" *Toktosunov,* 2025 WL 3492858, at *5 (quoting government's response brief).

ORDER ON PETITION FOR HABEAS CORPUS – 9

Again, Respondent did not seek an opportunity to address Petitioner's responsive arguments. Respondent also did not provide any evidence or argument to distinguish the conditions under which Petitioner is detained from those courts have repeatedly found to be present at NWIPC, which Respondent previously has conceded favor detainees in the *Banda* analysis.

Therefore, the Court finds that the third *Banda* factor weighs in favor of granting a bond hearing.

### 4. Delays in Removal Proceedings

Under the fourth and fifth *Banda* factors, the Court considers delays in the removal proceedings caused by the detainee or by the government, respectively. 385 F. Supp. 3d at 1118. Respondents argue that these factors are neutral, as "[t]here is no evidence that either party has caused delay." Dkt. No. 12 at 6. The Court agrees.

Therefore, the Court finds that the fourth and fifth *Banda* factor are neutral.

### 5. Likelihood That Proceedings Will Result in a Final Order of Removal

Under, the sixth *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. 385 F. Supp. 3d at 1118. Respondents argue that "[a]s an immigration judge has ordered Petitioner be removed, this factor weighs in favor of Respondent." Dkt. No. 12 at 6. In *Toktosunov*, the Court applied the *Banda* factors to a detainee who, like Petitioner, was detained at NWIPC while awaiting the decision of the BIA. In that case, however, the petitioner had prevailed before the IJ and the government had appealed his grant of asylum. *Id.* While the respondents argued that the uncertainty of the appeals process rendered this factor neutral, the Court found it weighed toward the petitioner, reasoning "[a]lthough the appeal adds some uncertainty, the fact remains that Petitioner has prevailed before an immigration judge on a prior occasion and, were the shoe on the other foot, the Court

is fairly certain that Respondents would then argue that this factor weighs in favor of denying a hearing." *Id.*

Now the shoe is on the other foot, and Respondents' present position is, in the Court's view (and consistent with its holding in *Toktosunov*), correct. Petitioner does not address this factor in his reply. *See generally* Dkt. No. 15.

Therefore, the Court finds the sixth *Banda* factor weighs against granting a bond hearing.

\*　　\*　　\*

In sum, three of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, one weighs in favor of Respondents, and two are neutral. Given the weight of the factors that favor Petitioner, particularly the length of his detention, the Court finds that his detention has become unreasonable. *See, e.g. Maliwat*, 2025 WL 2256711, at \*9 (finding petitioner entitled to a bond hearing when two factors favor petitioner, four factors are neutral, and no factors favor respondents); 2025 *Rahman*, WL 1920341, at \*5 (finding petitioner entitled to a bond hearing when four factors favor petitioner, one is neutral, and the sixth factor favors respondents); *Hong*, 2022 WL 1078627, at \*7 (finding petitioner entitled to a bond hearing when four factors favor petitioner, two factors were neutral, and no factors favored respondents).

**B.　Appropriate Relief**

Having found that Petitioner's detention has become unreasonable, the Court will now address his requests for relief. Petitioner alternately asks the Court to order his immediate release (Dkt. No. 5 at 1, 2; Dkt. No. 15 at 13, 14, 15) or to order a bond hearing (Dkt. No. 5 at 2, 6; Dkt. No. 15 at 9). In his reply brief, Petitioner asks for attorney fees and costs under the Equal Access to Justice Act (EAJA). Dkt. No. 15 at 10.

Because *Banda* stands for the rule that unreasonably prolonged detention under § 1225(b) *without a bond hearing* violates due process, the appropriate remedy for a habeas petition under

*Banda* is "an individualized bond hearing" at which an Immigration Judge determines whether continued detention is necessary to protect the community or prevent the detainee's flight—the same hearing afforded to noncitizens lawfully detained under § 1226(a). Consistent with the practice of this District, the Court will order the bond hearing to be scheduled within 14 days of this order. *See, e.g.*, *Cardozo*, 2025 WL 2592275, at *2 (rejecting timeline of 35 days ordered by report and recommendation and ordering bond hearing within 14 days); *Maliwat*, 2025 WL 2256711, at *1 (ordering bond hearing within 14 days); *Alvarado v. Clark*, No. C14-1322, 2014 WL 6901766, at *1 (W.D. Wash. Dec. 5, 2014) (same); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (ordering bond hearing within 14 days for petitioner misclassified as detained under 8 U.S.C. § 1225(b) rather than § 1226(a)); *but see Belqasim v. Hermosillo*, No. C25-1282, 2025 WL 3170929 (Nov. 13, 2025) (requiring hearing within seven days of order adopting report and recommendation). In lieu of a hearing, Respondents may comply with this order by releasing Petitioner.

Lastly, Petitioner's request for "attorney fees and compensation" under EAJA (Dkt. No. 15 at 10) is denied because Petitioner is pro se, arguing on his own behalf without an attorney in this matter.

## IV.    CONCLUSION

Accordingly, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED;

(2)    Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide him with a bond hearing before an Immigration Judge;

(3)    Petitioner's request for EAJA fees and costs is DENIED; and

//

//

ORDER ON PETITION FOR HABEAS CORPUS – 12

(4)     Petitioner's motions for appointed counsel (Dkt. No. 7) and for an evidentiary

hearing (Dkt. No. 8) are DENIED AS MOOT.

Dated this 23rd day of February, 2026.

_____
Tana Lin
United States District Judge

ORDER ON PETITION FOR HABEAS CORPUS – 13